All rise for the demonstration. Please be seated. I have a brief piece of case. 3-16-0167. In the matter of the Estate of Homer Erzenger, deceased Barbara Taylor Erzenger, appellant by Robert McIntyre, the stiff and timid Erzenger, accolade by Dana Meyer. The appellant may proceed. May it please the court. Essentially this case is about Mrs. Erzenger's probate claims as surviving spouse of Mr. Erzenger. Mr. Erzenger did not provide for her at will for reasons which I think are clear from the brief, but I just wanted to set the scene a little bit. So she's filed claims for her 1 3rd 4th share and also for her surviving spouse's award. There are some other claims that aren't part of what's being appealed. Mrs. Erzenger also has signed a pre-marital agreement, which is in the appendix, I believe, of both of both briefs and also won the original signed in 1986 and then in 2005 there was an amendment prepared making a few changes. She also filed a petition, if you will, for declaratory release anticipating, of course, that the estate would raise the I think the style of it is the anti-nuptial agreement, but raise the pre-marital agreement and borrow her claims and so she was vowing to avoid the effect of that in whole or at least in part. In all the variations of the agreement Florida law was the choice of law, wasn't it? In the in the initial agreement Florida law was the choice of law. The amendment was silent as to as to a choice of law. Well, it wasn't but it wasn't a new agreement it was just an amendment to the original agreement. Right? That may be for the court to determine but I it appears it doesn't appear that it says that it's a reaffirmation of there's no clause that says it's a reaffirmation of everything that went before and so like, yes, it is it does make certain modifications, although I think those modifications are significant to the question of the choice of law because what that what the what the amendment tells us is that while the Ersingers after their marriage resided in Florida the amendment also tells us that Homer originally had owned a condominium by himself in Florida prior to the marriage. That condominium had been sold a new condominium in Florida had been purchased jointly about that, when in 2005 when the amendment was drafted we now know from that that the Ersingers had moved moved back to Kankakee where Mrs. Ersinger of course had lived her whole life before becoming married to Mr. Ersinger in Florida and I don't know if it's not please forgive me, but I think it may be in the record that Mr. Ersinger also had at one point been a Kankakee resident before admittedly taking up residence in at least we know that in 2005 they then came back to Illinois that they sold their condominium in Florida and that then for the nine years prior to Mr. Ersinger's death in late 2014 he had also been a resident of Illinois I think it's also significant to the choice of law determination that apparently from what we're seeing in the petition to admit the will to probate, there isn't anything left in Florida to be administered or at least no real estate which would require ancillary administration there Mr. Ersinger now resides here, the estate is here the real estate that Mr. Ersinger comprises the bulk of Mr. Ersinger's estate is Illinois real estate and so what we're suggesting is that especially when frankly when the I guess where the rubber meets the road here in terms of the effect of the premarital agreement as it turns out isn't in a divorce situation isn't doesn't become important while the parties are living in Florida there's no divorce or anything like, as a matter of fact no divorce going on from what I can tell at all during their marriage where it becomes important is when Mrs. Ersinger in Illinois is seeking to pursue claims that basically are rights conferred on her by I guess what I'm saying is she really doesn't have any rights in Florida or that could be enforced by a Florida court though she may have at one point had circumstances arising which are now we will have not. Well did these folks both have children Yes it was a second marriage for both and yes both had children the children of Mr. Ersinger are the current executors and yeah Mrs. Ersinger also had children So what do you do with paragraph one of section 187 of the restatement of Catholic law Alright, I guess what I do with that is I say that and I actually refer maybe to the Pennsylvania cases we had cited in the reply brief and that's somewhat of a torturous history while we're getting there but I'm getting there by looking at Council's Florida cases which relies on Pennsylvania and then going to Pennsylvania and where Pennsylvania basically says and I think that's at least reflective of Illinois policy in which I don't know that I've seen it as well stated by but what they're saying look there are basically I'm suggesting that Illinois public policy says that while you certainly can waive those rights you certainly can but if you're going to waive them the waiver must be essentially what I'm going to refer to as the fair and reasonable standard in the Cheney case that we've cited in Roar and if it's not fair and reasonable then essentially it can't be used as in opposition to What was unfair about this agreement when your client signed it? I think I think it's there's enough support in the record to say that when they were married Mr. Erzinger was a millionaire Mrs. Erzinger did have some assets that she had inherited because I think there is a reference by Mr. Merrick in the court below that it's about $250,000 that she had inherited from her first husband but what I'm saying is at least as I understand if you will the fair and reasonable theory what we're saying is that at least under that case authority the only case authority prior to the adoption of the Uniform Act is that if you're going to give if you're going to give up those marital rights in which are there at least substantially for so that you can essentially so that you're not left out on the street if you will when when your spouse dies essentially you there has to be something to replace it now obviously no premarital agreement could be enforceable if it was the same as if it was going to be the same thing but for instance well if you will in the Parker case that counsel has cited and I think we've distinguished Mrs. Parker at least was to get $10,000 that at least in theory that was something to replace what what she might have otherwise claimed in the absence of a of a premarital agreement in the original antinatural agreement if you will the only thing that I can see that Mrs. Erzinger was getting is had that become necessary she could have had a life estate in the Florida condominium provided of course that she paid all the taxes in condominium fees and essentially everything that would take to on a monthly basis to maintain residence in a condominium otherwise the only other thing she got I suppose is Mr. Erzinger's also agreement should he be the survivor to not claim his marital share of of her property but as I understand in those cases when they're determining what is fair and reasonable it's a different thing than saying well is this two adult contracting parties and did they come to an agreement that in other words it has to at least has to make provision for the surviving spouse to be supported in some way what's unreasonable or unfair about so you've got people they're fellows of millionaires and she's not but he said look we're going to get married but I want to make sure that either we get divorced or if I die that my descendants, my children don't lose out on this deal and she says okay where do I sign, bam, what's wrong with that I think as least as I'm I guess resorting to policy what I see in the cases as the policy is you still when you're unmarried and even I guess based on the marriage relationship after you die you owe something to your spouse as a result of the marital relationship and while you can bargain with that I guess I'm not saying premarital premarital things are unfair but I'm still looking for an answer to what exactly was unfair about this and a natural agreement tell me why it was unfair what I'm suggesting was unfair is is the essentially the fact that Mrs. Arzinger got little if anything in the original agreement and that especially when compared to what she was giving up it was so insubstantial as to essentially as to constitute an unfair agreement she kept her assets right well she did other than when we get to the amendment then of course now we realize that at least by inference she may have contributed something to the purchase of the second condominium in Florida that essentially was jointly purchased and also she was to provide the boot if you will for the deposit at at Westwood Estates and so at least there there at Westwood Estates now instead of the if you will the life estate in his she's essentially getting most of her own money back for the deposit plus he then is getting a life estate I also I also want to address I guess what I the other part of the claim that we've made that I believe is a difficulty here is the fact that Mr. Erzinger essentially looking at the agreement as amended Mr. Erzinger breached that agreement and now Mr. Erzinger's estate seeks to raise up the agreement to empower Mrs. Erzinger's claims and essentially How did he breach it? What was the breach? He was to pay 50% of the of the expenses for Westwood Oaks and I think there's a reference in the amendment that there's a monthly maintenance fee at Westwood Oaks and some other things and we've alleged in count one that essentially he didn't pay those to the extent at least $21,000 Mr. McIntyre I just want to ask I'm sorry? I'd like to ask you a couple of factual questions Is Westwood Estates a retirement community? Yes And the money that went for the residence deposit did it stay intact or was some of that used periodically to supplement the payments? With counsel's permission I might have to go outside the record to let you know that but I think it's fair to say that you in this instance the deal they made you make you make a cash payment to begin with My mother lived there and it happened to them you can also get in a park but that's not the deal that the eartheners made So if she leaves Westwood Estates she's 91 now right? If she leaves Westwood Estates Does she get the whole $223,000 back? Or has that been diminished over the years? That will be my position if we ever get to that However there has been I think there has been some suggestion by the counsel or the appellees that if for some reason the premarital agreement were to be voided then there is a possible claim for Mr. Ersinger for whatever he may have contributed to that deposit If the agreement is enforceable then it would be enforceable by your client with regard to the obligation of the husband under the amendment And Judge we've included that I think in count two although we've pleaded it as a less favored alternative But on the other hand I guess what we're saying is that if there has been a material breach and whether there is a material breach is up to perhaps up to a fact determination then if we're an injured party we get to choose the remedy and not essentially not have the opposing party come in and say okay we're sorry there was a material breach but here's we're going to fix that With regard to the choice of law the amendment refers to the problem that caused them to have the first amendment In other words they had certain provisions of property in Hollywood Florida they no longer have that so that caused the need for an amendment Right? But it doesn't say it amends the whole plea and it refers to the other agreement That's the only thing it mentions that they're amending because of the change in circumstances It doesn't say they nullified or changed anything else in the earlier agreement It's entirely silent either way I think it's fairly common there'd be a clause by the way where reaffirming everything else other than what we've changed in in this amendment if you will there is no such clause there for what that's worth Thank you Thank you You may proceed May it please the court counsel Without reiterating everything that appellant's counsel has told you what we do have here is we do have an antinuptial agreement that was entered into in 1986 At the time that Mr. Erzinger and Mrs. Erzinger entered into this antinuptial agreement Mrs. Erzinger was a resident of the state of Illinois I think that's reflected in the agreement itself when it talks about the counsel she had representing her from Chicago, Illinois and the counsel he had representing him from Miami, Florida Knowing this, they both entered into this agreement and they entered into this agreement with the intent to reside in Florida, in which they did for the next 19 years The Erzingers in 2005 made the decision for whatever reason to come back from Florida to Illinois and at that time, that's when they revisited the antinuptial agreement and when they did that, they went back and not only did they do an addendum to bring everything up to date, but they acknowledged entering into that first antinuptial agreement in 1986 It's like the first paragraph of the addendum to the antinuptial agreement Upon returning to Illinois, they did live in Westwood, where Mr. Erzinger then passed away in 2014 It was shortly following his death that there was a petition to renounce the will and the petition to declare the antinuptial agreement invalid The appellant would like the court to reverse the trial this court to reverse the trial court's dismissal of those petitions on a couple bases, but I think before we get to the determination as to whether or not the trial court's decision was correct, we have to know what law applies to this case Part of the negotiation process that the Erzingers entered into in 1986 included a choice of law provision Now, in some instances, that may not be such a big deal, but in this case, there are vast differences between the laws applying to prenuptial or antinuptial agreements in the state of Florida, versus the laws applying to antinuptial agreements in the state of Illinois And it's hard to understand how almost 30 years after an agreement is and say, now we're going to change the law that you originally entered into under this agreement in 1986 This was what they they both had counsel, this was what was negotiated back in 1986 when they entered this agreement So what are the main differences in the law? It's really some of the disclosure requirements and the concept of fairness In the state of Florida, if it's a prenuptial agreement, you do not have to have any disclosure prior to entering into the agreement Now, the Erzingers didn't follow this. The Erzingers both disclosed assets they both provided a tax return they both disclosed a summary of debts So they actually went a step above the requirements that were even in existence at the time in 1986 in the state of Florida The other kind of ties into this argument as to whether or not this agreement is valid based upon the concept of fairness In regards to fairness, the state of Florida basically looks at will enforcement of the prenuptial agreement put the surviving spouse in such a condition that they would basically be a public aid recipient or something to that extent Where Illinois, we have a three part factor that's after 1986 had then been put into statute in regards to is there an unforeseen condition of punitary interest Is the agreement entered into voluntarily and with full information I think the third factor is was there any coercion. I know the third factor doesn't really apply to any issues in our case Although I think when you step back and you start to do the analysis, maybe it doesn't make as more stronger in the protection I think the public interest down there is recognizing that elderly couples do want to get married and they do want to protect their assets for their children of their prior marriage whether that prior marriage ended by divorce or death So if we start to do that analysis, I think we have to then look at the other arguments counsel's making First is that there's this breach of the agreement by Mr. Erzinger so we should throw the whole thing out I think under either Florida or Illinois that argument fails. In Florida we have the Gridley case where the survivor, I think it was actually divorce I don't think that one was a death where the that one was a death case because the spouse who passed away left an annuity of $150,000 and that annuity only made monthly payments of $100,000 to the surviving spouse The agreement itself provided that he was to leave $100,000 in trust period. Now the court found that yes, he did not follow the agreement of the prenuptial agreement but they did not find that a basis to rescind the agreement. They said what they would do is convert that annuity to a trust to comply with the original terms of the agreement. In Illinois we have the Parker case. In Parker both parties were supposed to fund a $10,000 certificate of deposit to go to the surviving spouse upon the death of one of them. They never did that. And so the surviving spouse tried to rescind the prenuptial agreement There was some issue as to whether that was rescinding on consideration. They said no consideration is the marriage itself that's adequate consideration for a prenuptial agreement and we're not going to rescind an agreement that was entered into by both spouses when we can fix the problem. We can pay in the $10,000 and correct what should have been done under the prenuptial agreement. So I think even if you look at the facts in this case in light most favorable to the opponent, that's the scenario we have here under either Gridley or under Parker. Whether we're in Florida or we're in Illinois. They both entered into this knowingly. They both have the assets upon entering into this agreement. Let's assume for purposes of argument that the $21,000 that the petition claims was unpaid assessments over a nine year period by Mr. Erzinger is correct that can be corrected still at this point. If the agreement is enforceable, then would the other side have a cause of action for the breach of the amendment? They do have still cause of action pending for breach in the estate or they would have an estate claim. I think they would. In this case they still do. This petition was a two count petition. The motion to dismiss was only as to count one which related to the validity of the prenuptial agreement and also related to the petition for renunciation because of course pursuant to the prenuptial agreement if they give up the right to renounce a will so the two are correlated together. Ms. Meyer? When I look at 187.2b of the restatement it talks about the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state. Certainly at the time that this was executed, Florida had a materially greater interest. That's changed over the years. Do we look at that at the time of execution or do we look at that now? Because clearly all of the interests are in That's a very good question and I don't think you're going to find a very clear answer at least in case law because I couldn't. But I think the restatement first says you look to a choice of law provision. I guess in looking at this, it's how can they anticipate in 1986 when they're entering into this and choosing that choice of law provision that sometime at a later date that law would change which could make their whole agreement invalid. And that's why I think you almost have to look at the time they're creating that contract. In other words it becomes very inequitable to the whole purpose of contracting later on down the road. The thing is that it is a 29 year marriage. Things change, they get older, people get sick, they lose their mental capacities and it would seem that the time when you should be looking at that is when you're actually having to deal with the issues that have arisen in the court. I agree it was a 29 year marriage but let's also remember that after 19 years of this, they did acknowledge that original agreement in their addendum. Realistically when we're dealing with the period of time in Illinois, we're dealing with a 9 year period of time. Then I guess I have to go back to does this violate Illinois public policy and I don't think it does because I don't think they could fulfill the three factors necessary to show the unfairness provision even in the state of Illinois. The first of those factors has to be an unforeseen condition of unitary interest and I don't think that applies in this case. For section 2 of 187 to apply, it's got to be an issue where the parties could not have determined by explicit agreement to do it. That's not a catch-all for everything. Paragraph 2 only applies in those cases where for example somebody contracts and he or she doesn't have the capacity to contract and then they say well even then it will apply unless one or two or three. So here there seems to be no question that these folks had the capacity to contract at the time they signed the anti-nepotism agreement so we don't even get to subsection 2 of section 187 do we? Well I do agree that I believe section 1 says if there's a choice of law provision that's what you should follow. And section 2 is in those situations where somebody without the capacity to contract contracts anyway and then it says we'll still apply the chosen law unless A or B. I agree. Thank you. Thank you. Thank you. And we have pointed out in the briefs that I wanted to at least give some emphasis to the idea that we can come along and say well the Parker case fixes everything and that means that all Mrs. Erdinger gets is sort of 23,000 dollars. It's the same for several reasons. Number one, which the Parker court essentially admits is well look Mr. Parker really breached the agreement until we got to the place where we knew upon his death that he actually hadn't made the relevant provision in his will. And they talk about looking at the intense parts if you will. Mr. Erdinger on the other hand was to pay half of the expenses as they became due. We don't know by the way yet when that when that breach occurred but at least that was during Mrs. Erdinger's lifetime and during a period of time when the bills for her were coming due and needed to be paid. So it's not that Mrs. Erdinger had some provision that on Mr. Erdinger's death he wasn't going to get something. He was basically he was to pay half of the expenses the monthly expenses and the monthly expenses are due during the month. But secondly And so they got paid, so she paid. Pardon me? Yes. Mrs. Parker for whatever reason didn't even argue a lack of fairness. Mrs. Parker argued a lack of consideration. In other words essentially from what I can tell from the Parker case a more traditional contract as a sort of argument there was offer, there was acceptance but there was no consideration in giving me my money. And the court said well of course there was consideration and frankly in the case of Mr. and Mrs. Erdinger there was consideration from a contract formation point of view. But the distinction is that the, if you will, the fairness and reasonableness standard in the Illinois case law to the extent of course the Illinois law applies is is a different a different sort of animal. But essentially the Parker court and by the way the Gridley court in Florida really pretty much found that that really that no breach occurred. If I can call your honors attention to page 7 of the reply brief one of the observations in the Gridley court's opinion seemed to be, paraphrasing here, that the decedent provided for all his wife's needs during the marriage, paid all the bills required by the anti-nuptial agreement until his hospitalization and thereafter the decedent's attorney paid all the bills. Well that's absolutely not what happened here. We've alleged that essentially that at some point that the those who are the current executors essentially commanded the account, they not pay the bills. Well she, there wasn't a collection action or anything like that, she just paid the bills. Right. And they're married. Yes. And he's alive. Yes. And we don't know if they just said, she just said, well I'll just, I got the money, I'll just write the check out of this account. Well, I'll say this, that might be a if we can get to the point where we can develop some facts, that might be a good question to ask either her or or the accountant. Yeah, and so I don't know if she wrote the checks or they have accounts so we're only going to have one version of the story, and then that's hers, but in the size of everything we're talking about here, is this total of $21,000 over how long? Well is that really a material thing? That's actually, that's not specified in the plate. Well, I mean, is that in the money we're talking about here, is that really a material breach? Well, I suggest it is, since again, it what we're suggesting, because the question of the deposit and who put the money down for the deposit is still one for factual development though it may be that most if not all of it was Mrs. Erzinger's, because what we're talking about is a jointly purchased condo in Florida whatever the profit was from that sale, and then Mrs. Erzinger providing the rest. So query at this point, under this state of the record, is she getting her own money back or is she getting some of Mr. Erzinger's money? But putting that question aside then that was essentially that was the one thing she was to get in the amendment because this life estate for the condo in Florida is whatever, for whatever that may have been worth, has now at least, has now as a result of circumstances disappeared. So that, yeah, that's why we're suggesting it is a material breach. He deliberately chose not to. I've got some tendencies I'm sorry, Justice. He deliberately chose not to honor the agreement. That's our allegation, yes. One minute. And I you know well, it's not really an above all, so ignore it if it violates the rules. I do make reference to the planning rules at least according to some of the cases we've cited if it's in a pro rate proceeding, we're entitled to take advantage of what Justice McKellar used to call the sloppy pleading rules. I don't know that I've ever seen that in anything he wrote, but in particular, the first district case that I've cited also makes it clear because that was a case where the claim had been made and then the estate responded with a response and the trial judge threw it out because it didn't meet his idea of 2-6-15 and the appellate court just recently in the fourth district said, well if we're going to essentially do notice pleading for the claims which it seems like we are, we also do notice pleading for all the all the, you know, all the pleads, and so at least we're suggesting based on that that we've at least you know, made enough of a claim that we should get to go forward and do some factual development. Thank you. Thank you. The court will take this case under advisement and render a decision in the next hearing.